UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 9:20-cv-80279-DMM-DLB

DARLENE DEARY, individually and
as assignee of DWIGHT NORMAN,

 *Plaintiff,*

v.

PROGRESSIVE AMERICAN INSURANCE
COMPANY,

 *Defendant.*

_____/

**PLAINTIFF'S AMENDED OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
ALTERNATIVE PARTIAL MOTION FOR SUMMARY JUDGMENT**

Progressive's intentional undervaluation of Ms. Deary's claim and failure to advise its insured of Ms. Deary's numerous settlement offers are questions of fact, not law. Ms. Deary would have settled her claim for the policy limits before she underwent invasive spinal surgery. Deary Dep. [D.E. 50-5] at 53:1-7. And had Progressive asked its insured whether he wanted Progressive to pay his policy limits to settle Ms. Deary's claim, he would have told them to do so. Norman Dep. [D.E. 50-32] at 49:20-50:2. Progressive's failure to exercise ordinary care and prudence in the handling of Ms. Deary's claim resulted in an excess judgment against its insured. Progressive's Motion for Partial Summary Judgment and Alternative Partial Motion for Summary Judgment [D.E. 51] should be denied.

## BACKGROUND

This action arises out of Progressive's failure to settle Ms. Deary's claim against its insured, Dwight Norman, despite having numerous opportunities to do so. On March 17, 2017,

Mr. Norman negligently operated his vehicle and collided with Ms. Deary's vehicle, causing her to sustain serious injuries (the "Accident"). At the time of the Accident, Mr. Norman was insured under an automobile policy issued by Progressive, with bodily injury limits of $25,000.00 per person.

Progressive was promptly notified of the accident and was aware that Ms. Deary was in pain due to the Accident. Claim Note [D.E. 50-3] at PGR 727 3-27-17 4:13PM. Progressive waited three weeks to open a bodily injury exposure for Ms. Deary and on April 17, 2017, sent a form letter to its insured advising that the value of the claims being made against him "may be more than are covered by [his] policy." April 17, 2017 letter, PGR 296 [D.E. 23-3]. This letter was not delivered to Mr. Norman, as Progressive sent it to an address it obtained from the police report, rather than the address it had on file directly from the insured. Claim Note [D.E. 50-3] at PGR 734 4-27-17 10:05AM. The letter failed to specify the nature of the claims or who was making a claim against him. April 17, 2017 letter, PGR 296 [D.E. 23-3]. Progressive's lack of diligence continued. Aside from performing a federal medicare research and ISO search in April and May 2017, Ms. Gabay took no other action on the Claim until late July 2017.

On July 17, 2017, Ms. Deary presented Progressive with a written offer to settle her claim for Mr. Norman's $25,000 policy limits. July 17, 2017 letter from D. Williams, PGR 121-22 [D.E. 23-4]. She enclosed medical records and bills which confirmed a permanent injury and impairment rating, a course of cervical facet injections, and a surgical recommendation from a board certified neurosurgeon. *Id.* On August 1, 2017, Progressive's adjuster undervalued Ms. Deary's claim, placing the value between $8,500 and $12,701. Liability Navigator, PGR 280-283 [D.E. 49-2]. This valuation included only $2,255-$4,100 in economic damages, $7,000 for past pain and suffering attributed to the facet injections, and nothing for future medical expenses or

future non-economic damages. *Id.*, *see also* Gabay Dep. [D.E. 49-3] at 93:5-10; 95:16-22; 96:2-8; 98:16-22. Susan Kaufman, Ms. Deary's expert, explained that:

> [B]ased on the objective findings of the MRI, the subjective complaints that were consistent with the objective findings, [Progressive] did not fairly or honestly evaluate Ms. Deary's claim.  They were gambling with Mr. Norman's assets when they misevaluated the claim.  They understood or should have understood their responsibility is to Mr. Norman and to properly protect him.  They had to fairly and honestly evaluate the claim.  And with the medical records and that July 17th demand package or settlement package, they did not do that.

Kaufman Dep. [D.E. 69-1] at 59:14-24.

On August 3, 2017, Progressive rejected Ms. Deary's offer and counteroffered only $8,500 to settle Ms. Deary's claim. Aug. 3, 2017 letter from A. Gabay, PGR 113 [D.E. 23-5]. Progressive did not inform its insured of Ms. Deary's offer or of its decision to reject it and offer $8,500 in response.[1]  On August 7, 2017, Ms. Deary provided Progressive with another written opportunity to settle her claim against Mr. Norman for his policy limits. Aug. 7, 2017 letter from D. Williams, PGR 311-13 [D.E. 23-6]. Four days later Progressive rejected Ms. Deary's offer and, knowing that its repeated rejections would cause litigation against Mr. Norman, wrote a letter to him advising that suit would be filed against him. Aug. 11, 2017 letter from A. Gabay, PGR 317 [D.E. 23-7]; Aug. 15, 2017 letter from A. Gabay, PGR 325 [D.E. 23-8].

On September 18, 2017, Ms. Deary provided Progressive with medical documentation showing that she was scheduled to undergo the recommended surgery and advising that a lawsuit against its insured would be forthcoming.  Following the letter, weeks passed with no suit filed, providing Progressive with an additional opportunity to protect its insured and settle Ms. Deary's claim for the policy limits.  Sept. 18, 2017 letter from D. Williams, PGR 108-11 [D.E. 37-1].

---

[1] Progressive sent a copy of the settlement offer to the same incorrect address for the insured and it was subsequently returned as undeliverable.  Progressive did not transmit the letter via e-mail, nor did it call the insured to inform him of the offer.  *See* [D.E. 50-3] at PGR 739 8-14-17 10:48AM.

Following receipt of the September 18 letter, Progressive did not advise its insured that Ms. Deary would be undergoing surgery, nor did it respond meaningfully to the correspondence.  No updated valuation was conducted nor were the policy limits tendered. Matz Dep. [D.E. 69-2] at 56:13-18.  And despite surgery being imminent, Progressive's adjusters still did not value Ms. Deary's claim at the policy limits, in contrast to Progressive's expert witness who acknowledged that the records provided on September 18, 2017 should have placed the value of Ms. Deary's claim in excess of $25,000. *See* McIntosh Dep. [D.E. 49-4] at 85:11-25.

On September 26, 2017, Ms. Deary's attorney's office advised Progressive that Ms. Deary was unable to undergo her surgery due to problems with her pre-operative bloodwork. McGee Dep. [D.E. 50-18] at 85:2-86:2. Progressive was advised that the surgery would be rescheduled in the future.  *Id.*  Despite having notice that Ms. Deary was still planning to proceed with surgery, Progressive did not tender its policy limits or make any attempt at settlement.  Ms. Deary's surgery occurred on November 16, 2017.

On November 21, 2017, as a direct result of Progressive's rejection of Ms. Deary's settlement offers and failure to tender the policy limits prior to her surgery, she filed a lawsuit against Mr. Norman in the 15th Judicial Circuit in and for Palm Beach County, Florida, No. 502017CA012768XXXXMBAK, for damages arising from the Accident (the "Underlying Lawsuit"). On May 22, 2019, a jury in the Underlying Lawsuit returned a verdict of $332,500.00 in favor of Ms. Deary.  A Final Judgment in that amount was entered against Mr. Norman on September 24, 2019, and on May 11, 2020, an order was entered against Mr. Norman for $75,102.08 for Ms. Deary's attorney's fees and costs pursuant to the proposal for settlement statute.  Had Progressive told Mr. Norman that it had an opportunity to settle Ms. Deary's claim

against him before suit was filed, he would have told them to pay the policy limits and protect him from suit.  Norman Dep. [D.E. 50-32] at 49:20-50:2.

## MEMORANDUM OF LAW

### I.        The Legal Standard for Summary Judgment in a Failure to Settle Case

"Because, 'it is [ordinarily] for the jury to decide whether [an] insurer failed to act in good faith,' [Progressive] bears a heavy burden at this summary judgment stage." *Manning v. Progressive Am. Ins. Co.*, No. 19-cv-808220MIDDLEBROOKS (S.D. Fla. Feb. 14, 2020) [D.E. 79], [D.E. 70-1] (citing *Harvey v. GEICO Gen. Ins. Co.*, 259 So. 3d 1, 7 (Fla. 2018)); *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 672 (Fla. 2004).  Reasonable diligence and ordinary care are both "material in determining bad faith" and "considerations of fact – not of law." *Campbell v. Gov't Employees Ins. Co.*, 306 So. 2d 525, 530-31 (Fla. 1974). This is because prudence and diligence are factual inquiries ordinarily reserved for the jury. *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980). "In most cases, [] the inherently flexible nature of the 'totality of the circumstances' standard renders a bad-faith claim unsuitable for summary disposition." *Moore v GEICO Gen. Ins. Co.*, 633 F. App'x 924, 928 (11th Cir. 2016) (citing *Berges*); s*ee also Wiggins v. Gov't Emps. Ins. Co.*, No. 3:16-cv-1142-J-32MCR, 2019 WL 338945, *1 (M.D. Fla Jan. 28, 2019).[2]

---

[2] Progressive cites to a string of inapplicable cases (with no discussion or explanation of the case) where it alleges summary judgment was granted in favor of the insurer, but those cases are all distinguishable and were pre-*Harvey*. Simply listing several cases where the insurer was granted summary judgment in a distinguishable bad faith case (most of which did not involve valuation issues) does not equate to an automatic grant of summary judgment.  Florida's Supreme Court recently made clear in *Harvey v. GEICO*, 259 So. 3d 1, 7 (Fla. 2018) that "it is for the jury to decide whether the insurer failed to 'act in good faith with due regard for the interests of the insured.'"

Progressive also cites to *Novoa v. GEICO*, No. 12-80223-cv, 2013 WL 172913 (S.D. Fla. 2013), *aff'd*, 542 F. App'x 794 (11th Cir. 2013).  The standard employed in *Novoa* was expressly overruled by the Florida Supreme Court in *Harvey*, which heavily criticized the Fourth District

**II.     Progressive's Intentional Undervaluation of Ms. Deary's Claim Violated its Good Faith Duties Toward its Insured**

Almost 100 years ago the Supreme Court of Florida held that an insurer owes a duty to its insured to negotiate with the claimant in good faith and to properly investigate the claim before rejecting an opportunity to settle:

> [the insurer's] decision not to settle should be an honest decision. It should be the result of the weighing of probabilities in a fair and honest way. If upon such consideration it decides that its interest will be better promoted by contesting than by settling the claim, the insured must abide by whatever consequences flow from that decision. He has so agreed. But, as already stated, such decision should be an honest and intelligent one. It must be honest and intelligent if it be a good-faith conclusion. In order that it be honest and intelligent it must be based upon a knowledge of the facts and circumstances upon which liability is predicated, and upon a knowledge of the nature and extent of the injuries so far as they reasonably can be ascertained.

*Auto Mut. Indem. Co. v. Shaw*, 184 So. 852, 857-58 (Fla. 1938). Progressive did not evaluate Ms. Deary's claim in a fair, honest, and intelligent way.

Progressive invites this Court into error by insisting on an incorrect legal standard, arguing that the question to be determined is whether it acted in conscious disregard for its insured or with indifference to its obligations under the policy. [D.E. 51] at 17 (citing *Francois v. Ill. Nat'l Ins. Co.*, 2002 WL 33760405 (S.D. Fla. Mar. 28, 2002)). *Francois* erroneously attributed this language to the Florida Supreme Court's opinion in *Shaw*. Such language is absent from the Florida Supreme Court's opinion, and that language should not be relied on by this Court. In *Harvey* the Florida Supreme Court admonished federal courts which applied a heightened legal standard for bad faith, making clear that "the critical inquiry in a bad faith is

---

for relying on the Eleventh Circuit *Novoa* opinion that misconstrued Florida law on the relevance of negligence, as it effectively minimizes "the seriousness of the insurer's duty to act in good faith with due regard for the interests of its insured." *Id.* at *9-10; *See also Cunningham v. Progressive Select Ins. Co.*, 2019 WL 4671194 (M.D. Fla. Jul. 29, 2019). Thus the holding in *Novoa* should be disregarded as it was based on the incorrect standard and it did not involve the bad faith undervaluation of a bodily injury claim.

whether the insurer diligently, and with the same haste and precision as if it were in the insured's shoes, worked on the insured's behalf to avoid an excess judgment." *Harvey*, 259 So. 3d at 7 (internal citations omitted).   And nothing in the standard failure to settle jury instruction or Florida caselaw requires that the insured prove that the insurance company act with conscious disregard or indifference to its obligations in order to act in bad faith.  The legal standard stated in Instruction 404.4 is whether Progressive acted fairly and honestly toward its insured and with due regard for his interests, not whether the insurance adjuster acted in conscious disregard.

An insurer breaches its duty to exercise ordinary care and prudence when it acts in a way that "fails to mitigate or unreasonably exacerbates the insured's exposure to liability." *Maharaj v. GEICO,* 996 F. Supp. 2d 1303, 1310 (S.D. Fla. 2014) (quoting *Valle v. State Farm Mut. Auto. Ins. Co.,* 394 F. App'x 555, 556 (11th Cir. 2010)).  "In addition, '[b]ecause the duty of good faith involves diligence and care in the investigation and evaluation of the claim against the insured, negligence is relevant to the question of good faith.'" *Hinson v. Titan Ins. Co.*, 656 F. App'x 482, 486 (11th Cir. Aug. 8, 2016) (quoting *Boston Old Colony*, 386 So. 2d at 785); *Harvey*, 259 So. 3d at 7. "In order for Plaintiffs to prevail, they need only prove that, under the totality of the circumstances . . . [Progressive] failed to settle, 'where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.'" *Lopez v. Allstate Fire and Cas. Ins. Co.*, No. 14-20654-Civ-Cooke/Torres, 2015 WL 526987 (S.D. Fla. Sept. 10, 2015) (citing *Boston Old Colony*, 386 So. 2d at 785). Progressive's lack of care prevents entry of summary judgment in its favor.

### A. Progressive's Undervaluation of Ms. Deary's Claim was Inconsistent with its Good Faith Duties

Throughout the handling of Ms. Deary's claim Progressive intentionally and repeatedly undervalued her claim, omitting future medical expenses and non-economic damages which

Progressive knew Ms. Deary was entitled to. Progressive now takes the untenable position that it did not act in bad faith because it needed confirmation that Ms. Deary had undergone surgery (costing over $250,000) in order to tender Mr. Norman's $25,000 policy limit.

Upon receipt of Ms. Deary's July 17, 2017 settlement offer, Progressive should have valued her claim in excess of the policy limits. The letter contained over 150 pages of medical records and bills, evidencing numerous doctors' visits, injections, chiropractic work, two surgical recommendations and recommendations for continued injections. PGR 121-276 [D.E. 50-12]. The records indicated that Ms. Deary's neurosurgeon assigned her a 7% disability rating and her chiropractor assigned her a 12-15% disability rating.

> Those objective injuries and subjective complaints was [sic] sufficient to evaluate the claim at or above the policy limits given that they were just $25,000. The fact that the surgery was recommended adds to that. That makes it even a larger value claim.

Kaufman Dep. [D.E. 69-1] at 42:11-43:7; 47:21-48:10 (emphasis added); 32:19-33:1; July 17, 2017 letter from D. Williams, PGR 121-276 [D.E. 50-12];

On August 1, 2017, Ms. Gabay entered her evaluation of Ms. Deary's injuries into Progressive's Liability Navigator. PGR 280-83 [D.E. 49-2]. A review of Progressive's initial evaluation of Ms. Deary's damages demonstrates that Progressive is not entitled to summary judgment as the evaluation contains numerous flaws that support a finding of bad faith. Most notably, Ms. Gabay did not include *any* damages for future medical expenses. Gabay Dep. [D.E. 49-3] at 98:16-22; 99:19-22; *See* Kaufman Expert Report [D.E. 57-1] at 7.

In *Holtzapple v. Nationwide Mut. Fire. Ins. Co.*, No. 17-cv-2026-Orl-41GJK [D.E. 101], [D.E. 70-2] at 7, the Court denied summary judgment, noting that the insurer "assessed the value of Plaintiff's claim at $8,000 after receiving Plaintiff's demand package detailing that Plaintiff incurred over $10,000 in medical expenses and estimated her future medical costs at $8,000."

8

The adjuster "did not include future medical costs in her assessment despite Dr. Brockman's diagnosis that Plaintiff's injuries were permanent." Here, Ms. Deary provided medical records reflecting the need for future medical treatment and surgery costing between $80,000-$100,000.

Progressive's undervaluation was not limited to its failure to include future medical expenses. The range for General Damage of $2,225-$4,100 was also inadequate, as was the meager $7,000 placed for Additional Damages. Ms. Deary's expert, Susan Kaufman, opined that a "fair and reasonable evaluation for Ms. Deary's General Damages associated with causing 2 cervical herniations would be in the $40,000-$60,000+ range." *Id.* at 11-12. This amount would take into account the diagnosis of two herniations, the series of two cervical injections, the March 29, 2017 ER visit, the six visits with Dr. Sheth at Spine and Brain Surgery, four visits with the chiropractor and the MRI. When asked about how she calculated the $7,000 for Additional Damages, Ms. Gabay simply stated that it was "based on experience" and that there was no formula used to obtain this number. Gabay Dep. [D.E. 49-3] at 98:4-9.

Progressive asserts that there was a "large disparity" between the 7% permanent impairment rating by Dr. Sheth and the 12-15% permanent impairment rating by David Bougis, DC. This argument ignores that the doctors evaluated Ms. Deary at different stages of her treatment progression, and that it is "not uncommon to have a difference in that range." Kaufman Dep. [D.E. 69-1] at 55:3-11. Ms. Gabay's note documenting her evaluation disregarded both findings of permanency and concluded that Ms. Deary's injuries did not pierce a permanency threshold. Claim Note [D.E. 50-3] at PGR 736-37 08-01-07 10:10AM. There was no question that, at the time Progressive received the July 17, 2017 offer to settle for the policy limits, Ms. Deary's injuries were caused by the accident. The lower permanency rating from Dr. Sheth (a neuro surgeon) was assigned with the following explanation:

> It is my opinion that all of the treatment Darlene has received, from date of accident through the present, which as included chiropractor treatment, physical therapy, pain medications, cervical spine steroid injections is directly related to her involvement in the accident on 3/17/17. Within a reasonable degree of medical probability, pt has sustained a 7% disability to the body as a whole from the accident.

PGR 175 [D.E. 50-12].

Progressive tries to support its gross undervaluation of Ms. Deary's claim by arguing that is was "never provided with the bill from Delray Medical Center." [D.E. 51] at 14.   But Progressive was provided with all the medical records from Delray Medical Center at the time of the July 17, 2017 offer to settle. The missing emergency room bill did not prevent Progressive from allotting an amount in their evaluation.  Kaufman Dep. [D.E. 69-1] at 70:20-71:11.  Ms. Deary's expert explained that Progressive could and should have put in a reasonable, generic amount for the ER visit until the final bill was received.  Progressive's decision to put zero for the cost in their evaluation was not reasonable.  *Id.* Progressive's undervaluation of Ms. Deary's claim based on her July 17, 2017 offer is evidence of bad faith:

> [B]y not fairly and honestly evaluating the claim, [Progressive] knew that either Ms. Deary was going to accept an amount of money that was less than what she was entitled and settle her claim or (b) not accept the offer that was made that was less than she was entitled and litigate the matter.  And if she went that direction, that Mr. Norman was exposed to large sums of money above the $25,000 policy limits that he purchased. And they gambled with Mr. Norman's assets by not fairly and honestly evaluating the claim.  And lo and behold, there's a judgment against Mr. Norman for a large sum of money and it is all due to Progressive's unreasonable and unfair evaluation of Ms. Deary's claim.

Kaufman Dep. [D.E. 69-1] at 59:24-60:11.  Progressive should have valued Ms. Deary's claim at or above $25,000 and tendered the limits after it received the July 17, 2017 letter.  *Id.* at 60:12-15.

**B. Progressive Refused to Increase Its Settlement Offer Until it Received Proof of Surgery**

Based on Ms. Gabay's undervaluation, Progressive approved a settlement range of $8,500 to $12,701.  Claim Note at 736 [D.E. 50-3].  Ms. Gabay was authorized to offer up to $12,701, but Ms. Gabay chose to repeatedly offer the low end of her settlement range, $8,500.[3]  Claim Note [D.E. 50-3] at PGR 737 08-03-2017 4:25 PM; Matz Dep. [D.E. 69-2] at 52:7-9, 53:15-17.[4] Ms. Deary provided Progressive with a second written opportunity to settle her claim, extending the deadline to August 14, 2017. PGR 311-13 [D.E. 51-19].  Progressive's adjuster and supervisor discussed the renewed opportunity to settle the claim against its insured for the policy limits and decided to "reiterate [the same] offer towards end of week closer to due date." Claim Note at PGR 738 at 08/07/17 2:45 PM [D.E. 50-3].[5]

On September 18, 2017, Ms. Deary provided Progressive with medical documentation showing that she was scheduled to undergo the recommended surgery and advising that a lawsuit against its insured would be forthcoming.  The letter provided Progressive with an additional opportunity to protect its insured and settle Ms. Deary's claim for the policy limits.  Sept. 18,

---

[3] Progressive's Claims Standards state that the appropriate response to a policy limit demand should explain the offer when less than the demand to the party that made the demand.  *See* [D.E. 79] (advising of the Parties' stipulation of fact). Progressive's August 3, 2017 response to the offer to settle stated only that Progressive was extending a settlement offer of $8,500.00, with no explanation.  PGR 780 [D.E. 50-17].  Progressive states that Ms. Gabay called Ms. McGee to discuss the reasoning for its offer of $8,500.  D.E. 51 at 14.  But the claims notes do not indicate that Ms. Gabay offered any explanation when she called Ms. McGee. Claim Note [D.E. 50-3] at PGR 738 08-04-17 1:31 PM.

[4] This approval was given blindly.  Ms. Gabay's supervisor did not review the July 17, 2017 offer letter. She saw the letter and the attached medical records for the first time at her deposition.  Matz Dep. [D.E. 69-2] at 35:12-18.

[5] After Progressive rejected Ms. Deary's offer and, knowing that its repeated rejections would cause litigation against Mr. Norman, wrote a letter to him advising that suit would be filed against him. Aug. 11, 2017 letter from A. Gabay, PGR 317 [D.E. 23-7]; Aug. 15, 2017 letter from A. Gabay, PGR 325 [D.E. 23-8].

2017 letter from D. Williams, PGR 108-11 [D.E. 37-1].  Progressive did not advise its insured that Ms. Deary would be undergoing surgery.[6]  No updated valuation was conducted and despite surgery being imminent, Progressive's adjusters still did not value Ms. Deary's claim at the policy limits.    Progressive's expert witness acknowledged that the records provided on September 18, 2017 should have placed the value of Ms. Deary's claim in excess of $25,000. *See* McIntosh Dep. [D.E. 49-4] at 85:11-25.  Following receipt of these new records, Progressive failed to tender its policy limits and did not provide a meaningful response to Ms. Deary's correspondence. Matz Dep. [D.E. 69-2] at 56:13-18.

Progressive argues that it continuously attempted to get updates on Ms. Deary's medical treatment over the next five months with no response.  This is belied by the record evidence. Ms. Gabay made contact with Ms. McGee and spoke to her on September 26, 2017, where Ms. McGee advised that Ms. Deary had proceeded to get pre-operative bloodwork but that due to irregularities with her blood tests, would be rescheduling her surgery.  Claim Note [D.E. 50-3] at PGR 740 09-26-17 3:47 PM.  Ms. Gabay did not make an offer to settle Ms. Deary's claim at this time.  During the next two months, Progressive should have updated its valuation and tendered the policy limits.  Instead Ms. Gabay focused her efforts on checking the court docket to see if suit was filed against its insured.  Progressive knew that Ms. Deary's claim was a "ticking financial time bomb and that suit could be filed at any moment."  *See* Claim Note [D.E. 50-3] at PGR 740; *Harvey*, 259 So. 3d at 7 ("In such a case, where '[t]he financial exposure to [the insured] [i]s a ticking financial time bomb' and '[s]uit c[an] be filed at any time,' any 'delay

---

[6] Mr. Norman was not advised of Ms. Deary's surgery until some point during the Underlying Lawsuit, at which time he expressed concern about his personal exposure.  Jan. 1, 2019 letter from J. Richards, RICHARDS 371-373 [D.E. 70-4].  Had Progressive asked him if he wanted the policy limits paid, he would have told them to settle and pay to prevent a lawsuit. Norman Dep. [D.E. 50-32] at 49:20-50:2.

12

in making an offer under the circumstances of this case even where there was no assurance that the claim could be settled could be viewed by a fact finder as evidence of bad faith.'") (citing *Goheagan v. Am. Vehicle Ins. Co.*, 107 So. 3d 433, 439 (Fla. 4th DCA 2012).

On December 8, 2017, a paralegal from Mr. Williams' office called Progressive and left a voicemail.  Claim Note at PGR 741 at 12/08/17 8:48 AM [D.E. 50-3].  Progressive inexplicably waited three weeks to call the paralegal back but learned on December 20, 2017, that Ms. Deary had undergone surgery.  Claim Note at PGR 741 at 2/20/17 3:22 PM [D.E. 50-3].  Progressive essentially did nothing with this information but it appears at some point between December 20, 2017 and April 11, 2018, the reserves were set at $25,000 "due to surgery."  Claim Note at PGR 743 at 04/11/18 6:40 AM [D.E. 50-3].[7]  Despite increasing the reserves, Progressive did not tender the policy limits.

On April 25, 2018, Marion Allums, the litigation adjuster on the file, again noted that Ms. Deary had surgery but that Progressive needed to obtain the records.  Claim Note [D.E. 50-3] at PGR 745 04-25-18 1:37 PM.  No offer was made.  On June 14, 2018, Progressive received discovery from the underlying action.  Only after Progressive received confirmation that Ms. Deary had undergone surgery and incurred over $250,000 worth of medical bills did it offer the $25,000 in its June 14, 02018 proposal for settlement. Claim Note [D.E. 50-3] at PGR 749 at 06-14-18 4:32 PM.

Progressive asserts that it needed the surgical records to determine that the surgery was not related to a subsequent February 2018 accident. But Progressive was on notice as early as September 2017 that Ms. Deary was scheduled for surgery and was informed in December 2017

---

[7] It is not clear when the reserves were adjusted to $25,000. Progressive allows its adjusters to arbitrarily decide if they want to note the reserves in the claims notes.  If the adjuster chooses not to do so, it is not possible to tell the historical reserves of a claim. Matz Dep. [D.E. 69-2] at 50:12-51:12.

that Ms. Deary had undergone surgery. Progressive's attempt to rewrite history should be rejected, as should its attempt to shield itself from liability by arguing that it needed additional medical records.  *See McMullen v. GEICO Indemnity Co.*, No. 14-cv-62467-BB, 2015 WL 11197744, at *7 (S.D. Fla. Oct. 9, 2015) (the insurer's "argument [that the claimant's attorney was to blame for delay] is unavailing because its fiduciary duty to timely and properly investigate the claim against its insured was not relieved simply because it was waiting to receive information from the claimant's attorney."; *Gutierrez v. Yochim*, 23 So. 3d, 1221, 1226 (Fla. 2d DCA 2009) ("whether it was reasonable for Dairyland to insist on additional medical information beyond what it already knew, whether it was reasonable for Dairyland to insist on further verification of the attorney's lien issue, and whether Dairlyland reasonably handled the purported 'tender' are factual disputes that are for determination by the finder of fact."); *Stalley v. Allstate Ins. Co.*, 183 F. Supp. 3d 1209, 1219-20 (M.D. Fla. 2016) ( "[a]lthough there is evidence that [the claimant's attorney] was not forthcoming with medical records or information about [the claimant's] condition, again, the correct focus is not on the actions of [the claimant] but those of Allstate. . . . Allstate's assertions that it did not have sufficient damages information to negotiate do not support summary judgment in its favor.").

Progressive presents no legal authority to support a finding of summary judgment in its favor. A "total failure of [the] insurer to timely consider the interest of the insured while considering settlement offers and concealing from insured the offer made after trial and misrepresenting the gravity of the claim constituted elements of a reckless disregard of the rights of the insured." *Campbell*, 306 So. 2d at 531. In *Campbell,* three months prior to trial, the claimant's attorney had warned the insurer that he believed the verdict "would probably exceed $10,000." *Id.* at 529.   But the "offers and advices were ignored by carrier and its claims

14

examiner." *Id.* The Court held "[b]ad faith in a factual situation of this kind is not a matter of law but is a question of fact for the jury. . . [as] reasonable diligence and ordinary care are considerations of fact – not of law." *Id.* at 530, *see also Holtzapple* [D.E. 70-2].[8]

Progressive's lack of care and diligence in the handling of Ms. Deary's claim precludes summary judgment. Progressive's actions suggest that it required Ms. Deary to undergo invasive spinal surgery and incur medical bills of over $250,000 in order to receive Mr. Norman's $25,000 policy limits. And its motion for summary judgment argues that it needed confirmation that surgery occurred before it would tender the limits. [D.E. 51] at 16. This action is not a "simple disagreement" about the value of Ms. Deary's claim. This case involves a blatant disregard for the interests of Progressive's insured and deliberate attempt to save money at the expense of its insured. Progressive's motion for summary judgment should be denied.

### C. Progressive Improperly Asks this Court to Enter Partial Summary Judgment on Two Issues

Progressive alternatively seeks partial summary judgment determining that it did not have an opportunity to settle after September 18, 2017 and that its lack of communications with its insured had no effect on the claim. The multiple requests for partial summary judgment are in contravention of Southern District of Florida Local Rule 7.1(c). Progressive's requests should be denied as they are not supported by the law or facts of this action.

---

[8] In *Fox Haven v. Nationwide Mut. Fire Ins. Co.*, No. 2:13-cv-399-FMM-29CM, 2015 WL 667935 (M.D. Fla. Feb. 17, 2015), a first-party claim, the court denied summary judgment because "a jury could reasonably conclude that Nationwide acted in bad faith by intentionally 'low balling' its calculation of [] damages." *Fox Haven of Foxfire Condo. IV Assoc., Inc.*, 2015 WL 667935 at *6. The Court noted that, based on the insurer's own valuation, the insurer had paid less than 20% of the eventual appraisal award. Id. at *5.

**1. Progressive is Not Absolved of Liability After September 18, 2017**

Progressive's position that it cannot be liable for bad faith after September 18, 2017 is in direct contravention to binding Florida law. Progressive's duty to settle did not end when it received the September 18, 2017 letter. Had Progressive tendered its policy limits to Ms. Deary prior to her November 16, 2017 surgery, she would have accepted the limits and settled her claim. Deary Dep. [D.E. 50-5] at 53:1-7; Kaufman Dep. [D.E. 69-1] at 86:15-87:13, 108:1-109:7; Matz Dep. [D.E. 69-2] at 67:16-68:11; 70:1-6. Progressive's duty to act in good faith 'in handling the defense of claims against its insured' continue[d] through the duration of the claims process." *Harvey*, 259 So. 3d at 10 (citing *Boston Old Colony*, 386 So. 2d at 785).

A review of Progressive's conduct after September 18, 2017 demonstrates that it is not entitled to partial summary judgment. After receiving documentation that Ms. Deary was scheduled to undergo invasive spinal surgery and advising that suit was imminent against Progressive's insured, Progressive did nothing to settle her claim, nor did it advise its insured that Ms. Deary would be undergoing surgery. Progressive's expert agreed that the records received on September 18, 2017 should have placed the value of Ms. Deary's claim in excess of $25,000. *See* McIntosh Dep. [D.E. 49-4] at 85:11-25. But Progressive did not perform a new valuation and did not tender the limits. Matz Dep. [D.E. 69-2] at 56:13-18.

Progressive took a back seat approach to its claims handling after it received the updated medical records in September. On September 26, 2017, Progressive was advised that Ms. Deary had proceeded to get pre-operative bloodwork but that due to irregularities with her blood tests, would be rescheduling her surgery. Claim Note [D.E. 50-3] at PGR 740 at 09-26-17 3:47 PM. Ms. Gabay did not make an offer to settle Ms. Deary's claim at this time. Gabay Dep. [D.E. 49-3] at 133:19-22. Rather than actively seek to settle Ms. Deary's claim and prevent suit from

16

being filed against Progressive's insured, Ms. Gabay focused her efforts on checking the court docket to see if suit was filed against its insured. Progressive did not act with the requisite care and prudence, resulting in suit being filed against its insured on November 21, 2017.

Even after suit was filed against its insured, Progressive continued to mishandle the claim.  Progressive learned on December 20, 2017, that Ms. Deary had undergone surgery. Progressive took no action towards settlement.  Progressive did not tender the limits until June 14, 2018, six months after learning that Ms. Deary had undergone surgery when it received bills totaling over $250,000. Claim Note at PGR 749 at 06/14/18 4:32 PM [D.E.50-3].

Progressive believes that its only has the contractual "responsibility to settle or defend at [its] option… there's no ongoing duty that we have to pay [the] claim." Progressive 30(b)(6) Dep. [D.E. 70-5] at 87:7-20.   But if Progressive chooses to reject a settlement under the circumstances of Ms. Deary's claim and to defend the action instead, it should be liable for the full freight of the judgment against its insured.

## 2. Progressive Cannot Ignore the Issue of its Lack Communication with its Insured

Progressive asks this Court to ignore its lack of communication with its insured, arguing that failing to advise its insured about the settlement offers and counter offers had no effect on the eventual excess judgment.  But whether or not Progressive acted in bad faith is determined by the totality of the circumstances and sending out form letters that came back undelivered, waiting several months to call Mr. Norman to obtain the correct address and failing to inform him about Ms. Deary's offer and Progressive's counter offer are all factors to be considered.

In *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 680 (Fla. 2004), the insurer challenged the trial court's jury instruction regarding an insurer's duty to communicate.  The jury was instructed that:

17

> The duty of good faith obligates an insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid the same.

*Id.* at 671. In holding that "the Second District erred in ruling as a matter of law that Infinity did not breach its good faith duty to inform and advise Berges of settlement opportunities," the Florida Supreme Court explained "**the duty to inform the insured of settlement opportunities is one of the duties subsumed within the duty of good faith owed by an insurer to an insured**. The failure to inform the insured of the settlement offer does not automatically establish bad faith; it is simply one factor for the jury to consider in determining whether the insurer acted in bad faith." *Id.* at 680 (citations omitted) (emphasis added). In *Campbell*, the Florida Supreme Court held "the trial judge and jury agreed that the total failure of insurer to timely consider the interest of the insured while considering settlement offers and concealing from insured the offer made after trial and misrepresenting the gravity of the claim constituted elements of a reckless disregard of the rights of the insured." *Campbell v. Gov't Employees Ins. Co.*, 306 So. 2d 525, 531 (Fla. 1974).

On April 17, 2017, Progressive sent a form letter to its insured advising that the value of the claims being made against him "may be more than are covered by [his] policy," without any detail as to the nature of the claim or who was asserting a claim against him. April 17, 2017 letter, PGR 310 [D.E. 50-9]. The letter was returned to Progressive an undelivered, as Progressive sent it to an address it obtained from the police report, rather than the address it had on file directly from the insured. Claim Note [D.E. 50-3] at PGR 734 4-27-17 10:05AM. Progressive made no efforts to obtain the correct address, nor did it send the letter via e-mail or call the insured to inform him of the offer. *See* PGR 739 at 8-14-17 10:48AM [D.E. 50-3].

18

On September 18, 2017, Ms. Deary provided Progressive with medical documentation showing that she was scheduled to undergo the recommended surgery and advising that a lawsuit against its insured would be forthcoming, but providing Progressive with an additional opportunity to protect its insured and settle Ms. Deary's claim for the policy limits. Sept. 18, 2017 letter from D. Williams, PGR 108-11 [D.E. 37-1]. Progressive did not advise its insured that Ms. Deary would be undergoing surgery. Despite multiple returned letters, Progressive did not take any action to meaningfully communicate with its insured, despite having his phone number and email address.

Mr. Norman testified that had Progressive advised him of Ms. Deary's offer to settle for his $25,000 policy limits, he "would have told them to settle and pay." Norman Dep. [D.E. 50-32] at 49:20-50:2. But Progressive did not explain their actions to him and this resulted in an excess judgment being entered against Mr. Norman. "Where the insured reasonably relies on the insurer to conduct settlement negotiations, and the insurer fails to disclose settlement overtures to the insured, the jury may find bad faith." *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 14-15 (Fla. 3d DCA 1991) (citing Annotation, *Duty of Liability Insurer to Settle or Compromise,* 40 A.L.R. 2d 168 § 17 (1955)); *Macola v. Gov't Emps. Ins. Co.*, 953 So. 2d 451, 455 (Fla. 2006) (quoting *Boston Old Colony*, 386 So. 2d at 785) ("This duty of good faith obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same."); *Aldana v. Progressive Am. Ins. Co.*, 2020 WL 5843711 (11th Cir. 2020) ("Moreover, there is no evidence that Progressive fulfilled its duties to advise Pyles about the possibility of an excess judgment, the possible extent of such a judgment,

19

and "of any steps he might take to avoid same.").[9] Progressive's complete lack of care as to whether or not its insured received its mail or was up to date on the claim being brought against him is further evidence of its bad faith handling of this claim.  Progressive is not entitled to partial summary judgment on its failure to communicate with its insured.

WHEREFORE, Darlene Deary, individually and as assignee of Dwight Norman, respectfully request that this Court enter an Order denying Progressive American Insurance Company's Motion for Partial Summary Judgment and Alternative Partial Motion for Judgment [D.E. 51], and any other relief this Court deems just and proper.

Respectfully Submitted,

VER PLOEG & MARINO, P.A.
100 S.E. Second Street, Suite 3300
Miami, FL 33131
305-577-3996
305-577-3558 *facsimile*

/s/ Michal Meiler
**Michal Meiler, Esq.**
Florida Bar No. 86522
mmeiler@vpm-legal.com
smcgee@vpm-legal.com
**S. Alice Weeks, Esq.**
Florida Bar No. 1002667
sweeks@vpm-legal.com
*Counsel for Darlene Deary*

---

[9] Progressive's attempts to communicate settlement offers with its insured (or lack thereof) appear relevant to the question of whether Progressive breached its duty to settle. *See, e.g., Anderson v. Gov't Emp. Ins. Co.*, No. 3:12-cv 32, 2014 WL 12616960, at *3 (M.D. May 8, 2014) (overruling relevancy objections and noting that information regarding the handling of claims "is relevant to the issue of whether [the insurer] considered [the insured's] best interest").

Case No.: 9:20-cv-80279-DMM-DLB

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on

December 4, 2020, on all counsel or parties of record on the Service List below.

/s/ Michal Meiler
**Michal Meiler, Esq.**

## SERVICE LIST

Adam A. Duke, Esq.
Christopher R. Machado, Esq.
Young, Bill, Boles, Palmer, Duke &
Thompson, P.A.
2 South Biscayne Blvd., Suite 3195
Miami, FL 33131
305-222-7720
305-492-7729 *facsimile*
aduke@flalawyer.net
cmachado@flalawyer.net
npolo@flalawyer.net
*Counsel for Progressive American Ins. Co.*

Michal Meiler, Esq.
S. Alice Weeks, Esq.
Ver Ploeg & Marino, P.A.
100 S.E. Second Street, Suite 3300
Miami, FL 33131
305-577-3996
305-577-3558 *facsimile*
mmeiler@vpm-legal.com
sweeks@vpm-legal.com
smcgee@vpm-legal.com
*Counsel for Darlene Deary*

B. Richard Young, Esq.
Young, Bill, Boles, Palmer, Duke &
Thompson, P.A.
226 S. Palafox Place, 7th FL
Pensacola, FL 32502
850-432-2222
850-432-1444 *facsimile*
bryoung@flalawyer.net
*Counsel for Progressive American Ins. Co.*

21