**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO.: 9:20-cv-80279-DMM-DLB**

DARLENE DEARY, individually and
as assignee of DWIGHT NORMAN,

     *Plaintiff,*

v.

PROGRESSIVE AMERICAN INSURANCE
COMPANY,

     *Defendant.*

_____/

**PLAINTIFF'S AMENDED OMNIBUS**
**OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE***

Progressive American Insurance Company's eight Motions *in Limine* should be denied, as many of them are moot and the others ask that this Court ignore the totality of the circumstances standard and instead impose a heightened causation standard, which has been repeatedly rejected by the Florida Supreme Court. Progressive's Motion Progressive's Motion *In Limine* to Exclude and Testimony and/or Argument Related to Fact Witnesses Providing Legal Conclusions and Expert Opinions [D.E. 53]; Progressive's Motion *In Limine* Excluding Evidence Regarding Plaintiff's Injuries that were not Provided to Progressive During the Handling of the Claim [D.E. 55]; Progressive's Motion *In Limine* to Exclude any Testimony and/or Argument Related to Plaintiff's Expert Susan Kaufman Having Been Previously Retained by Undersigned Counsel's Firm [D.E. 57]; Progressive's Motion *In Limine* to Preclude Plaintiff and Plaintiff's Counsel from Offering Argument or Testimony at Trial for Which a Privilege was Previously Asserted [D.E. 59] should all be denied as moot, as Ms. Deary has already agreed to

the relief sought during the Parties' conferral process.[1] Progressive's Motion *In Limine* to Exclude Argument by Plaintiff that Progressive Breached its Duty of Good Faith by Failing to Communicate with its Insured [D.E. 54]; Progressive's Motion *In Limine* Regarding the Time Frame for Bad Faith Evidence [D.E. 58]; Progressive's Motion *In Limine* to Preclude Certain Expert Witness Testimony at Trial [D.E. 60]; and Progressive's Motion *In Limine* to Exclude and Testimony and/or Argument Related to Other Claims [D.E. 62], as the question of bad faith is determined under the totality of the circumstances. *See e.g. Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 680 (Fla. 2004); *Harvey v GEICO*, 259 So. 3d 1, 7 (Fla. 2018); *Jaimes v. GEICO Gen. Ins. Co.*, 534 F. App'x 860, 865-66 (11th Cir. 2013).

## FACTUAL BACKGROUND

Progressive was promptly notified of the March 17, 2017 accident in which its insured Dwight Norman was wholly liable.  On March 21, 2017, Progressive was advised that Ms. Deary was in pain. Claim Note [D.E. 50-3] at PGR 727 at 3-27-17 4:13PM.   Progressive did not open a bodily injury exposure for Ms. Deary but did open a one for her mother, Elizabeth Diente.  PGR 725 at 3-25-17 2:52 PM.  On March 23, 2017, Progressive evaluated Ms. Diente's claim and determined it was worth up to $1,500.00, setting a negotiation range of $500-$1500, and settling her claim for $500.00 the same day.  Claim Note [D.E. 50-3] at PGR 729 at 3-23-17 3:19PM and 3-23-17 3:20PM.

On April 11, 2017, Progressive received a faxed copy of the letter of representation for Ms. Deary.  PGR 300-301 [D.E. 50-6].  On April 14, 2017, three weeks after receiving notice that Ms. Deary was injured, Progressive opened a bodily injury exposure for Ms. Deary's claim.

---

[1] Progressive's motion regarding privilege assertions is partially unopposed, as Progressive also seeks to preclude Ms. Deary from eliciting testimony regarding the general practices employed by Gordon & Partners in handling personal injury claims, as discussed *infra.*

Claim Note [D.E. 50-3] at PGR 732 at 4-14-17 9:07AM. And on April 17, 2017, Progressive sent a letter to its insured advising that the value of the claims being made against him "may be more than are covered by [his] policy." PGR 296 [D.E. 23-3]. The letter does not include any description as to the nature of the claim or claimants. *Id.* This letter was not delivered to Mr. Norman, as Progressive sent it to an address it obtained from the police report, rather than the address it had on file directly from the insured.  Claim Note [D.E. 50-3] at PGR 734 at 4-27-17 10:05AM; Norman Dep. [D.E. 50-32] at 17:7-18.

Over the course of eight months, Ms. Deary provided Progressive with medical records and bills, updates on her treatment, and made numerous offers to Progressive to settle her claim against Mr. Norman for the Policy's bodily injury limits.  On July 17, 2017, she provided records of a permanent injury and impairment rating, a course of cervical facet injections, and a surgical recommendation from a board certified neurosurgeon. PGR 121-22 [D.E. 23-4].  On August 1, 2017, Progressive's adjuster valued Ms. Deary's claim at between $8,500 and $12,701, omitting any valuation for future medical expenses. PGR 280-283 [D.E. 49-2], *see also* Gabay Dep. [D.E. 49-3] at 93:5-10; 95:16-22; 96:2-8; 98:16-22.

On August 3, 2017, Progressive rejected Ms. Deary's offer and counteroffered only $8,500 to settle Ms. Deary's claim. PGR 113 [D.E. 23-5].  Progressive did not inform its insured of Ms. Deary's offer or of its decision to reject it and offer $8,500 in response.[2]  On August 7, 2017, Ms. Deary provided Progressive with another written opportunity to settle her claim against Mr. Norman for his policy limits. PGR 311-13 [D.E. 23-6]. Four days later Progressive rejected Ms. Deary's offer and, knowing that its repeated rejections would cause litigation

---

[2] Progressive sent a copy of the settlement offer to the same incorrect address for the insured and it was subsequently returned as undeliverable.  Progressive did not transmit the letter via e-mail, nor did it call the insured to inform him of the offer. *See* PGR 739 at 8-14-17 10:48AM [D.E. 49-1].

against Mr. Norman, wrote a letter to him advising that suit would be filed against him. Aug. 11, PGR 317 [D.E. 23-7]; PGR 325 [D.E. 23-8].

On September 18, 2017, Ms. Deary provided Progressive with medical documentation showing that she was scheduled to undergo the recommended surgery and advising that a lawsuit against its insured would be forthcoming, but providing Progressive with an additional opportunity to protect its insured and settle Ms. Deary's claim for the policy limits. PGR 108-11 [D.E. 37-1]. Progressive did not advise its insured that Ms. Deary would be undergoing surgery. No updated valuation was conducted and despite surgery being imminent, Progressive's adjusters still did not value Ms. Deary's claim at the policy limits, in contrast to Progressive's expert witness who acknowledged that the records provided on September 18, 2017 should have placed the value of Ms. Deary's claim in excess of $25,000. *See* McIntosh Dep. [D.E. 49-4] at 85:11-25. Following receipt of these records, Progressive failed to tender its policy limits and did not meaningfully respond to Ms. Deary's correspondence.

On September 26, 2017, Ms. Deary's Progressive was advised that Ms. Deary was unable to undergo her surgery due to problems with her pre-operative bloodwork and that surgery would be rescheduled. Claim Note at PGR 740 at 09-26-17 3:47 PM [D.E. 49-1]. Progressive did not tender its policy limits or make any attempt at settlement. Ms. Deary's surgery occurred on November 16, 2017. Had Progressive tendered the policy limits prior to Ms. Deary's surgery, she would have accepted it and settled her claim against Mr. Norman. Deary Dep. [D.E. 50-5] at 53:1-7.

On November 21, 2017, as a direct result of Progressive's rejection of Ms. Deary's three written settlement offers, she filed a lawsuit against Mr. Norman which resulted in an excess judgment.

## <u>LAW AND ARGUMENT</u>

I.      **Progressive's Motion *in Limine* to Exclude Any Testimony and/or Argument Related to Fact Witnesses Providing Legal Conclusions and Expert Opinions [D.E. 53]**

Progressive seeks to preclude Ms. Deary from eliciting legal conclusions or expert opinions from fact witnesses.  While Ms. Deary may question the adjusters regarding their knowledge, training, and experience regarding Progressive's duties towards its insureds, she will not ask questions regarding the employees' knowledge of Florida case law or for any legal conclusions or opinions.  This motion should be denied as moot, as Plaintiff agreed to this relief during the Parties' conferral.

Progressive trained its employees regarding their duties; allowing Progressive's employees to testify about these duties is not synonymous with testifying about Florida law. These are insurance industry standards that Progressive's employees, as licensed insurance professionals, are required to follow.

Courts have permitted insurance company employees to testify about what their obligations towards their insureds are. In *Hayas v. GEICO Gen. Ins., Co.*, No. 8:13-CV-1432-T-33AEP, 2014 WL 5590808, at *7-8 (M.D. Fla. Nov. 3, 2014), the Court rejected the argument Nationwide puts forth here.  The insurer in *Hayas* argued that the plaintiff "may attempt to question GEICO adjusters regarding their knowledge or understanding of bad faith law in Florida." The insurer argued that the standard of bad faith is not within the knowledge of a lay witness; that whether an adjuster understands the legal concept of bad faith "has no bearing on how the claim was handled;" and that "testimony and questioning regarding the standard of bad faith in Florida is impermissible as it invades the purview of the Court, which is tasked with instructing the jury on the law." Hayas argued that the insurer's employees "[m]ay fairly give

factual testimony with regard to their training and experience, and the duties that they believe that they had in the handling of this claim." *Id.* at 3. The Court concluded that "[s]ince GEICO's duties to Hayas are 'seminal factual factors' necessary in the presentation of Hayas' claims against GEICO, Hayas argues that he should not be precluded from presenting such evidence at trial. *Id*. This Court agrees." The court permitted Hayas to ask the insurer's employees about their training, experience, and duties in accord with Rule 701. The court stated that it would not allow any witness to "offer impermissible legal conclusions, testimony of which the person is not qualified to opine, whether lay or expert, redundant testimony, irrelevant testimony, and testimony based on speculation as to the parties' intent."

In *Ford v. Gov't Emps Ins. Co.*, No. 1:14cv180-MW/GRJ (N.D. Fla. Feb. 3, 2016) [D.E. 163], [D.E. 71-1], the Court followed the reasoning in *Hayas* and held that it was "permissible for Plaintiff 'to inquire of the GEICO employees regarding training, experience, and duties in accord with Rule 701, which governs lay witness testimony."   This Court should follow *Hayas* and *Ford* and permit Progressive's employees to testify about their training, experience and duties.  Progressive's motion should be denied.

> **II.     Progressive's Motion *in Limine* to Exclude Argument by Plaintiff that Progressive Breached its Duty of Good Faith Failing to Communicate with its Insured [D.E. 54]**

Progressive's motion should be denied, as the duty to communicate with the insured is subsumed in Progressive's overall duty of good faith.  Under Florida law, an insurer's good-faith duty "obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid the same." *Macola v. Gov't Emps. Ins.*

*Co.*, 953 So. 2d 45, 455 (Fla 2006) (quoting *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980)).

Contrary to Progressive's assertion that Ms. Deary needs to prove a causal connection between its failure to communicate with its insured and the excess judgment, a central tenant of any bad faith action is the insurer's communication with its insured. *See Jaimes v. GEICO Gen. Ins. Co.*, 534 F. App'x 860, 865-66 (11th Cir. 2013). Progressive had a duty to use the same degree of care and diligence in the investigation and resolution of Ms. Deary's claim against Norman as a person of ordinary care and prudence should exercise in the management of his or her business. Progressive cannot dispute that this includes informing the insured of settlement opportunities and the reasonable steps the insured could take to avoid an excess judgment. *See Aldana v. Progressive Am. Ins. Co.*, No. 5:18-cv-157-Oc-30PRL (M.D. Fla. Apr. 5, 2019) [D.E. 32] at 3-4, [D.E. 32] (rejecting a similar argument put forth by the insurer, and holding that "whether Progressive communicated potential settlement offers to its insured and whether it advised its insured to contribute personal funds would appear to be relevant to the[] allegations [of bad faith].")

Progressive asks this Court to adopt a bad faith standard that requires a lack of communication to be the cause of the excess judgment. But that is not what Florida law requires. In *Berges*, 896 So. 2d at 680, the insurer challenged the trial court's jury instruction regarding an insurer's duty to communicate. The jury was instructed that:

> The duty of good faith obligates an insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid the same.

*Id.* at 671. In holding that "the Second District erred in ruling as a matter of law that Infinity did not breach its good faith duty to inform and advise Berges of settlement opportunities," the

Florida Supreme Court explained "**the duty to inform the insured of settlement opportunities is one of the duties subsumed within the duty of good faith owed by an insurer to an insured**. The failure to inform the insured of the settlement offer does not automatically establish bad faith; it is simply one factor for the jury to consider in determining whether the insurer acted in bad faith." *Id.* at 680 (citations omitted) (emphasis added). In *Campbell*, the Florida Supreme Court held "the trial judge and jury agreed that the total failure of insurer to timely consider the interest of the insured while considering settlement offers and concealing from insured the offer made after trial and misrepresenting the gravity of the claim constituted elements of a reckless disregard of the rights of the insured." *Campbell v. Gov't Employees Ins. Co.*, 306 So. 2d 525, 531 (Fla. 1974).

Progressive failed to communicate with its insured during the critical eight month period between the Accident and the Underlying Lawsuit. "Where the insured reasonably relies on the insurer to conduct settlement negotiations, and the insurer fails to disclose settlement overtures to the insured, the jury may find bad faith." *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 14-15 (Fla. 3d DCA 1991) (citing Annotation, *Duty of Liability Insurer to Settle or Compromise*, 40 A.L.R.2d 168 § 17 (1955)); *Macola v. Gov't Emps. Ins. Co.*, 953 So. 2d at 455 (quoting *Boston Old Colony,* 386 So. 2d at 785) ("This duty of good faith obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same.").

The undisputed evidence in this case demonstrates that Progressive failed to effectively communicate the details of Ms. Deary's claim, including the nature of her claim, extent of her injuries, repeated offers to settle, and Progressive's response to those settlement offers. *See*

Norman Dep. [D.E. 50-32] at 37:4-5, 45:34, 46:12-15, 49:20-2; Kaufman Dep. [D.E. 69-1] at 79:8-11; Gabay Dep. [D.E. 49-3] at 61:10-62:16; Helton Dep. [D.E. 70-5] at 74:18-76:4; Matz Dep. [D.E. 69-2] at 26:10-11. Had Progressive told Mr. Norman that it could settle Ms. Deary's claim against him before suit was filed, he would have told them to pay the policy limits and protect him from suit. Norman Dep. [D.E. 50-32] at 49:20-50:2. Ms. Deary should be allowed to introduce evidence of Progressive's communication, or lack thereof, with its insured as part of the totality of circumstances standard, and Progressive's good faith duties under the law.

### III.   Progressive's Motion *in Limine* Excluding Evidence Regarding Plaintiff's Injuries that were not provided to Progressive during the Handling of the Claim [D.E. 55]

This motion should be denied as moot, as Ms. Deary agreed to this relief during the Parties' conferral. Progressive's Certificate of Good Faith Conferral is incorrect and not reflective of the Parties' agreement. *See* November 4, 2020 e-mail from A. Weeks to C. Machado memorializing the Parties' conferral [D.E. 71-4].

### IV.   Progressive's Motion *in Limine* to Exclude Any Testimony and/or Argument Related to Plaintiff's Expert, Susan Kaufman, having been Previously Retained by Undersigned Counsel's Firm [D.E. 57]

This motion should be denied as moot, as Ms. Deary agreed to this relief during the Parties' conferral.

### V.   Progressive's Motion *in Limine* Regarding the Time Frame for Bad Faith Evidence [D.E. 58]

Progressive's motion to limit the time frame of admissible evidence should be denied, as the totality of Progressive's actions and inactions from the date of the accident to the date of the final judgment are relevant to the issue of bad faith. Progressive continued to undervalue Ms. Deary's claim and failed to tender the policy limits even after it had obtained information that it internally recognized should have placed the value at above the policy limits. The first time

9

Progressive offered the policy limits was when it served its June 14, 2018 proposal for settlement, and the first time it tendered its limits was on September 11, 2019, following entry of the final judgment against its insured. Progressive's actions throughout the underlying litigation is relevant and admissible.

Bad faith is determined by the totality of the circumstances in the handling of the claim against the insured. "An insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business. For when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured...."*Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 668-69 (Fla. 2004) (quoting *Boston Old Colony Ins. Co. v. Gutierrez,* 386 So. 2d 783, 785 (Fla 1980). "It is clear that in an action for bad faith against an insurance company for failure to settle a claim within policy limits, all materials, including documents, memoranda and letters, contained in the insurance company's file, up to and including the date of judgment in the original litigation, should be produced." *Allstate Indem. Co. v. Ruiz*, 899 So. 2d 1121, 1126 (Fla. 2005) (quoting *Stone v. Travelers Ins. Co.*, 326 So. 2d 241, 243 (Fla. 3d DCA 1976); *United Servs. Auto. Ass'n v. Jennings*, 731 So. 2d 1258, 1260 (Fla. 1999); *Dunn v. Nat'l Sec. Fire & Cas. Co.*, 631 So. 2d 1103, 1109 (Fla 5th DCA 1993)).

The *Ruiz* Court did not distinguish between cases where there was a demarcated failure to settle point and held that "all such materials prepared after the resolution of the underlying disputed matter and initiation of the bad faith action may be subject to production." *Id.* at 1130. Courts recognize that the entire conduct of the insurer, up to the date of the final judgment, and

10

occasionally post-dating the final judgment, is relevant to whether the insurer acted in bad faith under the totality of the circumstances.  For example, in *Campbell*, 306 So. 2d at 531, the verdict finding bad faith was supported by the totality of the insurer's conduct. The Court held, "the total failure of insurer to timely consider the interest of the insured while considering settlement offers and concealing from insured the offer made after trial and misrepresenting the gravity of the claim constituted elements of a reckless disregard of the rights of the insured. This continued recklessness was clearly substantiated by the Washington verdict and judgment for $18,500 against insured."

In *Vazquez v. GEICO Gen. Ins. Co.*, No. 16-CA-3304-O, filed in the Circuit Court of the 9th Judicial Circuit in and for Orange County, Florida, the insurer made the identical argument Progressive makes here, attempting to limit the scope of evidence to the time during which there was an opportunity to settle for the policy limits.  The *Vazquez* court rejected this limitation, holding that the insurer's "conduct up to the date of the final judgment is potentially relevant under the totality of the circumstances." *Vazquez* Order [D.E. 71-5] at 9.

Throughout the instant bad faith action, Progressive has continued to insist (without a factual basis), that it was somehow missing medical records from Delray Medical Center which would have affected its valuation.  But during the lawsuit, Progressive obtained all of Ms. Deary's medical records preceding the lawsuit, including all records from Delray Medical Center.   Upon review, it is clear that there was no additional information contained in that record which would have changed the value of Ms. Deary's injuries, which should have been set at above the policy limits upon Progressive's receipt of the July 17, 2017 settlement offer. *See* Kaufman Dep. [D.E. 69-1] at 70:20-71:11 ("Progressive had the medical records from Delray

11

Medical Center.  They did not have the bill. . . . I don't think that was reasonable for them to take that approach").

Progressive's attempt to limit the time frame of the evidence should be rejected.  The records produced during the underlying lawsuit confirmed that there was nothing to justify its failure to properly adjust her claim and omit key elements of damages such as future medical expenses and non-economic damages.  Yet Progressive advances an argument that Ms. Deary's attorneys were purposefully withholding documents.  The allegedly withheld documents either did not exist or they did not support Progressive's position that Ms. Deary's injuries did not exceed $25,000.  Progressive's adjuster, Marion Allums, also attempted to justify Progressive's refusal to value Ms. Deary's injuries at the $25,000 policy limits because an April 2018 ISO report revealed a subsequent accident.  But this excuse is belied by the undisputed evidence that Progressive was aware of the following: on September 18, 2017 Progressive was told that Ms. Deary was scheduled for surgery; on September 26, 2017 Progressive was told that Ms. Deary went in for pre-operative bloodwork and would need to reschedule her surgery due to irregularities; on December 20, 2017, Progressive was told that Ms. Deary had gone through with her surgery.  This information pre-dated the February 2018 subsequent accident which appeared in Progressive's April 2018 ISO search.

Progressive's conduct in offering less than half of the policy limits to settle Ms. Deary's claim for over eight months, forcing Ms. Deary to file suit against Mr. Norman, is consistent with its conduct throughout the underlying litigation, where it did not offer the policy limits until June 2018.  The jury is entitled to view all the evidence of Progressive's conduct in this case, including its attempts to justify its low-value offers at the expense of its insured throughout the litigation of the underlying lawsuit.

**VI.    Progressive's Motion *in Limine* to Preclude Plaintiff and Plaintiff's Counsel from Offering Argument or Testimony at Trial for which a Privilege was Previously Asserted [D.E. 59]**

Ms. Deary agrees that she will not elicit testimony for which a privilege was previously asserted.   But Progressive's motion goes beyond the relief stated and asks that this Court preclude Ms. Deary's attorneys from testifying as to their general practices. Ms. Deary's attorneys should be allowed to explain to the jury what they generally do without revealing any privileged information. For example, if Progressive asks the hypothetical question of whether Ms. Deary would have accepted the policy limits if tendered following her September 18, 2017 letter enclosing her surgical recommendation and date of scheduled surgery, Ms. Deary's attorneys should be entitled to respond that they generally would present any offer to their client and it would ultimately be up to their client to decide whether to accept a settlement offer.  Such testimony reflects both their ethical duties and their general practice but does not implicate any attorney-client privileged communications or their mental impressions.

Progressive's motion should be denied, as Ms. Deary will not elicit testimony over which she previously asserted a privilege objection.

**VII.    Progressive's Motion *in Limine* to Preclude Certain Expert Witness Testimony at Trial [D.E. 60]**

Ms. Kaufman is qualified to render expert witness testimony in this case relating to Progressive's compliance with the industry customs and standards applicable to claims handlers in the State of Florida.  She has over 30 years of insurance industry experience.  Her opinions are based upon facts and are the result of a reliable methodology.  She has been a Florida Licensed All Lines Adjuster since 1986. *See* Kaufman Curriculum Vitae [D.E. 57-1].  She has 32 years of insurance industry claims handling experience. *Id.*  She has adjusted and handled a wide variety of claims, including bodily injury, property and bad faith claims made directly against insurance

companies. *Id.*  She frequently trained and mentored other adjusters on how to handle claims consistent with industry good faith claims handling standards. For the last nine years, Ms. Kaufman has worked as an independent consultant/expert on cases involving coverage disputes and claim handling issues. *Id*.

Progressive does not (because it cannot) challenge her qualifications to opine on insurance industry customs and standards regarding good faith claim handling practices.  It instead attempts to mischaracterize her opinions as relating to the legal effect of a proposal for settlement.  And her testimony regarding Progressive's intentional and systematic undervaluation of Ms. Deary's claim, its communication with its insured, as well as her reference to Progressive's claims standards are relevant to her expertise related to whether Progressive met the industry standards relating to good faith claims handling.  At no time does Ms. Kaufman purport to give opinions outside the scope of claims handling.

### A.  Progressive's Communication with its Insured is Part of the Industry Customs and Practices Applicable to Claims Handling

As discussed *supra*, Progressive's duty to communicate with its insured is an integral part of its overall duty of good faith.  Progressive invites this Court into error by asserting that Ms. Deary would need to prove that the failure to communicate with its insured caused the excess judgment.  The Florida Supreme Court has rejected such a myopic approach:

> The obligations set forth in *Boston Old Colony* are not a mere checklist. An insurer is not absolved of liability simply because it advises its insured of settlement opportunities, the probable outcome of the litigation, and the possibility of an excess judgment. Rather, the critical inquiry in a bad faith is whether the insurer diligently, and with the same haste and precision as if it were in the insured's shoes, worked on the insured's behalf to avoid an excess judgment. "[T]he question of whether an insurer has acted in bad faith in handling claims against the insured is determined under the 'totality of the circumstances' standard." Further, it is for the jury to decide whether the insurer failed to "act in good faith with due regard for the interests of the insured." This Court will not reverse a jury's finding of bad faith where it is supported by competent,

14

substantial evidence, as "it is not the function of [the appellate court] to substitute its judgment for the trier of fact.

*Harvey*, 259 So. 3d at 7 (internal citations omitted).

Ms. Kaufman explained "Progressive has a duty to keep their insured advised on the status of the claim as well as any steps he can take to minimize any personal exposure. . . . CC'ing him in a letter does not correspond to him receiving this information." Kaufman Dep. [D.E. 69-1] at 92:1-93:11.

> "Under Florida law, an insurer's good-faith duty "obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same." Macola v. Gov't Emp. Ins. Co., 953 So. 2d 451, 455 (Fla. 2006) (quoting Boston Old Colony Ins. Co. v. Gutierrez, 386 So. 2d 783, 785 (Fla. 1980)). **Accordingly, Progressive's attempts to communicate settlement offers with its insured (or lack thereof) appear relevant to the question of whether Progressive breached its duty.** See, e.g., Anderson v. Gov't Emp. Ins. Co., No. 3:12-cv-32, 2014 WL 12616960, at *3 (M.D. May 8, 2014) (overruling relevancy objections and noting that information regarding the handling of claims "is relevant to the issue of whether [the insurer] considered [the insured's] best interest").

*Aldana* [D.E. 32], [D.E. 71-2] at 3 (emphasis added).

In addition to failing to communicate the details of Ms. Deary's claim and injuries related to her policy limits offers to Mr. Norman, Progressive also failed to advise Mr. Norman that suit would be filed against him due to Progressive's repeated rejections of the policy limits offers, or why Progressive was offering only $8,500 to resolve her claim, in contravention to its own internal policies and the industry standards requiring it to advise of the possibility of an excess judgment and the probable outcome of litigation. *See* [D.E. 79] (advising of the Parties' stipulation of fact regarding Progressive's Claims Standards). "Progressive was aware when letters were returned that there was an issue, and they should have inquired with Mr. Norman to find out if that was a good address or not. They did not do that. They did not to my knowledge

15

resend them.  . . . And there were numerous letters that were sent to Egret address that were returned, and yet no evidence of them taking any further steps to make sure their insured was understanding what was going on." Kaufman Dep. [D.E. 69-1] at 80:1-11.

Ms. Kaufman's knowledge and experience as an insurance professional qualifies her to render expert witness testimony regarding what Progressive should and could have done to keep its insured informed.  Progressive's request to limit her testimony should be rejected.

### B. Progressive's Internal Guidelines Are Relevant to the Determination of Whether Progressive's Adjusters Acted in Compliance with the Industry Customs and Standards

Ms. Kaufman's reference to Progressive's internal Claims Standards is relevant and admissible.  In explaining the source of the industry standards applicable to an insurer's good faith duties, Ms. Kaufman explained:

> Throughout my career working for an insurance company as well as to the present date, adjusters are taught about the good faith duties, about -- and those good faith duties are industry standards.  When case law comes out, there was a time period where I was responsible for summarizing and distributing summary for the Claim staff so that they understood that the case law represented a change of industry standards.  So, those are things that insurance claim professionals are all taught. They need to understand what the rules are so they can comply with them.  And so insurance companies relay industry standards so they know what to do, so they can measure their claims staff, if they're complying with what's required of them so that as industry standards change, they are complying with those changing standards or applying those changing standards. These are universal.  These are sort of adjusting 101 that all claim adjusters understand or are required of them.

Kaufman Dep. [D.E. 69-1] at 24:12-25:8. Whether the good faith duties are memorialized in Progressive's Claims Standards, or whether the adjusters are following Progressive's unwritten internal policies is relevant to the issues in this case.  Adjusters are trained, in part, through Progressive's written manuals.  Thus reference to whether they are complying with internal guidelines bears on the ultimate issues in this case.  Progressive's adjusters cannot be allowed to feign ignorance of their obligations towards their insureds or argue that they merely made a

clerical error in the adjustment of the claim where even their internal guidelines instruct them on proper claims handling.

Progressive's Claims Standards are kept on a shared server available to any Progressive employee. Helton Progressive 30(b)(6) Dep. [D.E. 71-3], *Manning v. Progressive Am. Ins. Co.*, No. 19-cv-808220MIDDLEBROOKS (S.D. Fla. Feb. 14, 2020) at 19:16-23. These claims standards provide, in general terms, the adjusters' obligations to the insured in the context of a third-party liability claim. *Id.* at 32:3-7. An adjuster has to act fairly and honestly towards an insured, and with due regard for the insured's interests during the claim process. *Id.* at 32:8-17. An adjuster is also required to keep the insured advised as to the progress of the claim and as to the potential for a claim in excess of the policy limits. *Id.* at 33:4-16. And the adjuster should settle claims when it can and should for the policy limits. *Id.* at 32:18-33:2.

For example, Progressive admits that its adjusters should keep the insured informed of settlement opportunities. *See* Helton Dep. [D.E. 70-5] at 81:8-25. And its Claims Standards state that the appropriate response to a policy limit demand should explain the offer when less than the demand to the party who made the demand. *See* [D.E. 79] (advising of the Parties' stipulation of fact). Progressive's August 3, 2017 response to the offer to settle stated only that Progressive was extending a settlement offer of $8,500.00, with no explanation. PGR 780 [D.E. 50-17]. Progressive states that Ms. Gabay called Ms. McGee to discuss the reasoning for its offer of $8,500. D.E. 51 at 14. But the claims notes do not indicate that Ms. Gabay offered any explanation when she called Ms. McGee. Claim Note [D.E. 50-3] at PGR 738 at 08/04/17 1:31 PM. Notably absent is any communication with the insured regarding Progressive's response to the settlement offer. And Progressive's failure to send letters to the insured's correct address cannot be disregarded as mere negligence or a clerical error. Progressive's adjusters knew of

17

their responsibility to keep the insured informed, and Progressive's Claims Standards memorialize this policy.

> **C. Progressive's Systematic Undervaluation of Ms. Deary's Claim is Indicative of a Failure to Comply with the Good Faith Claims Handling Standards, Rather than a Mere Mistake**

Ms. Kaufman testimony regarding Progressive's systematic undervaluation in this case is relevant, as it was not a mere mistake or mere negligence that led to Progressive's repeated rejections of Ms. Deary's settlement offer and failure to tender the policy limits prior to suit being filed against its insured.  When asked pointed questions regarding the notes and testimony given by adjuster Amy Gabay regarding why she disregarded the permanency ratings given by Ms. Deary's physicians and noted instead that no threshold had been pierced, Ms. Kaufman explained that "It's the only explanation I can come up with other than Progressive having a systematic process to undervalue claims."  And Progressive's valuation was part of a systematic plan:

> A.   The fact that it just wasn't one claim professional that evaluated the claim they way they did, the fact that there were -- I forget what they call them -- floaters or assistant claim professionals when someone's out of the office, Mr. Adams -- nobody changed the evaluation.  Nobody disagreed with Ms. Gambay's [sic] initial evaluation until way after the fact, including a supervisor and the fact that more than one claim professional felt that valuing this claim up to $12,701 was reasonable makes me wonder if it's a systemic issue at Progressive.
> Q.  That is just based on your experience or is that based on your analysis of what transpired here?
> A.   That commentary was based upon my 34 years in the industry and tens of thousands of claims reviewed and evaluated and negotiated, and my training.

Kaufman Dep. [D.E. 69-1] at 75:21-76:14.

 Ms. Kaufman's testimony should not be limited, as she analyzes Progressive's conduct and whether it conforms to the industry customs and standards applicable to insurance claims handling in Florida.  The jury is entitled to consider Progressive's actions under the totality of

the circumstances standard and Ms. Kaufman's testimony will assist them by explaining what Progressive's adjusters could and should have done, as well as whether their actions can be attributable to mere mistakes or whether Progressive provided them with the tools to comply with their good faith duties.

**VIII.   Progressive's Motion *in Limine* to Exclude Any Testimony and/or Argument Related to Other Claims [D.E. 62]**

Elizabeth Diente's claim will not be a focal point in Ms. Deary's case but evidence related to it should not be excluded, as it is relevant to Progressive's overall handling of the claims against its insured.  Progressive's good faith duties include investigating all claims arising from the accident in order to settle them within the policy limits and obtain a full release of its insured.  In this case, Progressive knew from the first report of the accident that Ms. Deary's mother, Elizabeth Diente, had been injured.  During its investigation of Ms. Diente's claim, she advised Progressive that her daughter, Darlene Deary, had been injured in the accident as well.  Claim Note [D.E. 50-3] at PGR 727 at 03/21/17 4:13 PM.  Rather than opening a bodily injury exposure for Ms. Deary or investigating her claim, Progressive waited three weeks until April 14, 2017, days after it received a letter of representation from Ms. Deary's attorneys.  Claim Note [D.E. 50-3] at PGR 732 at 04/14/17 9:07AM.

And the fact that both Ms. Diente and her mother presented bodily injury claims is relevant to the quality of Progressive's communication with its insured.  On April 17, 2017, Progressive sent what it calls an "excess letter" to its insured.  April 17, 2017 letter, PGR 296 [D.E. 23-3]. Progressive credits this letter as satisfying its duty to advise the insured of the nature of the claims presented and the possibility of an excess judgment.  Helton Dep. [D.E. 70-5] at 41:9-16.  But the letter lacks any description as to how many claims are being presented, the identity of the claimants, whether the claims are for property damage, bodily injury, or any other

19

coverage part. April 17, 2017 letter, PGR 296 [D.E. 23-3]. Progressive's incomplete communication is relevant to whether it complied with its good faith duties.

Progressive's handling and settlement of Ms. Diente's claim is also relevant to respond to Progressive's justification for repeatedly offering only the bottom of its negotiation range as a negotiation tactic. It is clear based on the handling of both Ms. Diente and Ms. Deary's claim that Progressive was trying to save itself money. On March 23, 2017, Progressive determined that Ms. Diente's claim was worth between $500 and $1,500. Claim Note [D.E. 50-3] at PGR 729 at 03/23/17 3:19 PM. Rather than offer anything in the middle of that negotiation range, Progressive offered only the bottom of its range, as it did with Ms. Deary's claim. Ms. Diente accepted the $500 offer, giving Progressive a $1000 windfall for the amount it determined would reasonably compensate Ms. Diente.

In its attempt to maximize its own profits, Progressive repeatedly offered Ms. Deary only $8,500 despite internally valuing her claim at up to $12,701. It ignored the undisputed evidence which would value her claim in excess of the policy limits and offered only the bottom of its negotiation range. In driving a hard bargain, Progressive placed its interests ahead of its insured, gambling with his financial well-being. The jury should be entitled to hear that this negotiation strategy was not isolated, and was how Progressive handled all the claims against Mr. Norman arising from the Accident.

WHEREFORE, Darlene Deary, individually and as assignee of Dwight Norman, respectfully request that this Court enter an Order denying Progressive American Insurance Company's eight Motions *in Limine*, and any other relief this Court deems just and proper.

Case No.: 9:20-cv-80279-DMM-DLB

Respectfully Submitted,

VER PLOEG & MARINO, P.A.
100 S.E. Second Street, Suite 3300
Miami, FL 33131
305-577-3996
305-577-3558 *facsimile*

/s/ Michal Meiler
**Michal Meiler, Esq.**
Florida Bar No. 86522
mmeiler@vpm-legal.com
smcgee@vpm-legal.com
**S. Alice Weeks, Esq.**
Florida Bar No. 1002667
sweeks@vpm-legal.com
*Counsel for Darlene Deary*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on

December 4, 2020, on all counsel or parties of record on the Service List below.

/s/ Michal Meiler
**Michal Meiler, Esq.**

## SERVICE LIST

Adam A. Duke, Esq.
Christopher R. Machado, Esq.
Young, Bill, Boles, Palmer, Duke &
Thompson, P.A.
2 South Biscayne Blvd., Suite 3195
Miami, FL 33131
305-222-7720
305-492-7729 *facsimile*
aduke@flalawyer.net
cmachado@flalawyer.net
npolo@flalawyer.net
*Counsel for Progressive American Ins. Co.*

B. Richard Young, Esq.
Young, Bill, Boles, Palmer, Duke &
Thompson, P.A.
226 S. Palafox Place, 7th FL
Pensacola, FL 32502
850-432-2222
850-432-1444 *facsimile*
bryoung@flalawyer.net
*Counsel for Progressive American Ins. Co.*

21

Michal Meiler, Esq.
S. Alice Weeks, Esq.
Ver Ploeg & Marino, P.A.
100 S.E. Second Street, Suite 3300
Miami, FL 33131
305-577-3996
305-577-3558 *facsimile*
mmeiler@vpm-legal.com
sweeks@vpm-legal.com
smcgee@vpm-legal.com
*Counsel for Darlene Deary*